**IN THE UNITED STATE DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
(Northern Division)

| | | |
|---|---|---|
| MANUEL PORTILLO, | * | |
| a resident of Baltimore County | | |
| | * | |
| FRANCIS BETANCOURTH, | | |
| a resident of Carroll County | * | |
| | | |
| c/o Public Justice Center | * | |
| 201 N. Charles Street, Suite 1200 | | |
| Baltimore, MD 21201 | * | Civil Action No. 1:24-cv-02660-GLR |
| | | |
| Plaintiffs, on behalf of themselves | * | |
| and others similarly situated, | | |
| | * | |
| v. | | |
| | * | |
| SECOND CHANCE, INC. | | |
| 1700 Ridgely Street | * | |
| Baltimore, MD 21230 | | |
| Serve on: Mark Stephen Foster | * | |
| 600 East Seminary Avenue | | |
| Towson, MD 21286 | * | |
| | | |
| MARK STEPHEN FOSTER | * | |
| 600 East Seminary Avenue | | |
| Towson, MD 21286 | * | |
| | | |
| 300 PAINTING & REMODELING LLC | * | |
| 9908 Canvasback Way | | |
| Damascus, MD 20872 | * | |
| Serve on: Jose Javier Rivas Mendez | | |
| 9908 Canvasback Way | * | |
| Damascus, MD 20872 | | |
| | * | |
| JOSE JAVIER RIVAS MENDEZ | | |
| 3 Observation Court #303 | * | |
| Germantown, MD 20876 | | |
| | * | |
| Defendants. | | |

1

## FIRST AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT

1.     Plaintiffs Manuel Portillo and Francis Betancourth—together with many dozens of similarly situated workers (collectively, "Plaintiffs")—were jointly employed by Second Chance, Inc. ("Second Chance"); its founder and president, Mark Foster; its subcontractor, 300 Painting and Remodeling LLC ("300 LLC"); and 300 LLC's owner, Jose Rivas Mendez, (collectively, "Defendants"). Plaintiffs did part of the core work of Second Chance's operation: "deconstructing" homes in the mid-Atlantic area and beyond by removing furniture, flooring, cabinets, windows, fixtures, and other materials from residential properties to salvage such materials and prepare the properties for rehabilitation or demolition.

2.     Although Second Chance presents itself to the public as an "innovative social enterprise" that provides "livable wages," it in fact engages in wage theft by depriving many employees, including Plaintiffs, of their hard-earned overtime pay and other required wages. Despite setting the terms and conditions of Plaintiffs' employment, controlling nearly everything about their work including their work sites and schedules, and requiring them to wear Second Chance-branded vests and drive Second Chance-branded vans, Second Chance has sought to increase its revenues by funneling Plaintiffs' work through 300 LLC—a subcontractor that, on information and belief, exists primarily to supply labor for Second Chance. Together, Second Chance and 300 LLC decided to illegally misclassify Plaintiffs as independent contractors and to deny Plaintiffs the wages required under federal and state law. In at least several instances, Defendant Foster personally hired Plaintiffs and then assigned them to work for Second Chance through 300 LLC, although these individuals did the same work done by deconstruction employees on Second Chance's payroll. Defendant Foster also demonstrated his control over some of these employees by directing them to do landscaping and other work at his home and

2

personally supervising their work—all while continuing to keep them off Second Chance's payroll by paying them through 300 LLC.

3. Plaintiffs now bring this action as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 207 and 216(b) to recover their earned wages, including overtime wages, which Defendants failed to pay in violation of FLSA, 29 U.S.C. §§ 201 *et seq.* Plaintiffs also assert individual and class-action claims for unpaid wages and misclassification under the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. §§ 3-401 *et seq.*; the Maryland Wage Payment and Collection Law ("MWPCL"), *id.* §§ 3-501 *et seq.*; and the Maryland Workplace Fraud Act ("MWFA"), *id.* §§ 3-901 *et seq.*

## Jurisdiction and Venue

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 29 U.S.C. § 216(b) (FLSA), and 28 U.S.C. § 1367 (supplemental jurisdiction).

5. This Court has supplemental jurisdiction over the state-law claims because they are so related to Plaintiffs' federal FLSA claims that they form part of the same case or controversy under Article III, Section 2 of the United States Constitution.

6. This Court has personal jurisdiction over Second Chance because Second Chance is a Maryland corporation conducting business in the state of Maryland.

7. This Court has personal jurisdiction over Defendant 300 LLC because 300 LLC is a Maryland corporation conducting business in the state of Maryland.

8. This Court has personal jurisdiction over Defendant Mark Stephen Foster because Mr. Foster resides in and conducts business in Maryland and thus has continuous and systematic contacts with the state.

9.      This Court has personal jurisdiction over Defendant Jose Javier Rivas Mendez because Mr. Rivas Mendez resides in and conducts business in Maryland and thus has continuous and systematic contacts with the state.

10.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

## Parties

11.     Plaintiff Manuel Portillo is a Maryland resident. He was jointly employed by Defendants from approximately January 2021 through approximately August 28, 2023.

12.     Plaintiff Francis Betancourth is a Maryland resident. She was hired by Second Chance in approximately 2017 and was later jointly employed by Defendants from approximately 2019 through June 4, 2024.

13.     As required by the FLSA, 29 U.S.C. § 216(b), each Plaintiff has given written consent to become a party to this action.  True and correct copies of Plaintiffs' FLSA consent forms are attached hereto as Exhibit 1.

14.     Defendant Second Chance is a Maryland corporation with its principal place of business in Maryland. At all times relevant to this action, Second Chance was Plaintiffs' employer within the meaning of the FLSA, MWHL, MWPCL, and MWFA.

15.     Second Chance is an enterprise engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. § 203(s). Second Chance, itself and jointly with subcontractors, engages workers to deconstruct properties in states across the mid-Atlantic region and beyond. Second Chance's employees transport materials and goods in interstate commerce to accomplish this work. Upon information and belief, most, if not all, of those materials and goods were produced for and transported in interstate commerce before making their way to Second

Chance's possession. Both in Maryland and out of state, Second Chance employees handle and work with those materials and goods to complete their work.

16.     At all times relevant to this action, Second Chance earned more than $500,000 in annual gross income, volume of sales made, or business done.

17.     Defendant Mark Foster is a Maryland resident and the president of Second Chance.

18.     At all times relevant to this action, Mr. Foster served as Plaintiffs' employer within the meaning of the FLSA, MWHL, MWPCL, and MWFA.

19.     Mr. Foster has managerial responsibility for and exercises operational control over Second Chance. He has substantial control over the terms of conditions of the work of individuals employed by Second Chance, including those jointly employed by its subcontractors.

20.     Mr. Foster, in his individual capacity and on behalf of Second Chance, maintains and controls Second Chance's finances; has the power to hire and fire Second Chance employees, including those jointly employed by its subcontractors; is involved in the payment of wages to such employees; determines and supervises such employees' schedules and work assignments; and is otherwise responsible for the terms and conditions of such employees' work, including Plaintiffs' work.

21.     Defendant Jose Javier Rivas Mendez ("Mr. Rivas Mendez") is a Maryland resident and is the sole owner and operator of 300 LLC.

22.     Mr. Rivas Mendez also owned and controlled A&V Painting & Remodeling LLC ("A&V") and J.L Painting & Remodeling LLC ("J.L") (together with 300 LLC, "the Rivas LLCs"). The Maryland Department of Assessments & Taxation lists A&V's current status as "forfeited" and J.L's current status as "dissolved," whereas 300 LLC remains active and

continues to jointly employ workers with Second Chance. During the periods of time relevant to this action that A&V and J.L were active, they served as subcontractors for Second Chance to perform deconstruction work, employed Plaintiffs, and were in all relevant respects functionally identical to 300 LLC.

23.     At all times relevant to this action, one or more of the Rivas LLCs were Plaintiffs' employer within the meaning of the FLSA, MWHL, MWPCL, and MWFA.  Specifically, 300 LLC employed both Plaintiffs from at least July 2022 until each Plaintiffs' termination.

24.     The Rivas LLCs, including 300 LLC, were each an enterprise engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. § 203(s). The Rivas LLCs, jointly with Second Chance, employed workers to deconstruct properties in states across the mid-Atlantic region and beyond. Employees of the Rivas LLCs transported materials and goods in interstate commerce to accomplish this work. Upon information and belief, most if not all of those materials and goods were produced for and transported in interstate commerce before making their way to the Rivas LLCs' possession. Both in Maryland and out of state, the Rivas LLCs' employees handled and worked with those materials and goods to complete their work.

25.     Upon information and belief, at all times relevant to this action, while serving as Plaintiffs' joint employers, each of the Rivas LLCs earned more than $500,000 in annual gross income, volume of sales made, or business done.

26.     At all times relevant to this action, Mr. Rivas Mendez served as Plaintiffs' employer within the meaning of the FLSA, MWHL, MWPCL, and MWFA.

27.     Mr. Rivas Mendez had managerial responsibility for and exercised operational control over the Rivas LLCs. Together with Mr. Foster and Second Chance, he had substantial control over the terms of conditions of the work of individuals employed by the Rivas LLCs.

28.     Mr. Rivas Mendez, in his individual capacity and on behalf of the Rivas LLCs, maintained and controlled the finances of the Rivas LLCs; shared with Second Chance the power to hire and fire the Rivas LLCs' employees; was involved in the payment of wages to such employees; and was otherwise responsible for the terms and conditions of such employees' work, including Plaintiffs' work.

## Factual Allegations

29.     Defendants hired Plaintiff Portillo in January 2021 to work on a deconstruction crew. Defendants assigned Plaintiff Portillo to work at sites in Maryland and in other states including Virginia, West Virginia, Pennsylvania, New Jersey, Florida, and Maine.

30.     Plaintiff Portillo's responsibilities as a deconstruction crew member included removing furniture, cabinets, fixtures, roofing, and flooring from assigned homes. Within Plaintiff Portillo's first month on the job, Second Chance project manager, Gene Metzger, assigned Plaintiff Portillo to the role of driver. Mr. Metzger asked Plaintiff Portillo for his driver's license and made a photocopy of it.  In this role, in addition to performing deconstruction tasks, Plaintiff Portillo drove deconstruction crews in a Second Chance vehicle to and from worksites. Up to three times per week, Plaintiff Portillo also had to refuel the Second Chance van he was assigned to drive at the beginning or end of the day. When he was assigned to project sites in or near Maryland, Plaintiff Portillo also had to pick up the Second Chance van and keys at the Second Chance warehouse before going to his assigned worksite(s), and he had to return the van and keys to the warehouse after leaving his assigned worksite(s). Defendants also occasionally assigned Plaintiff Portillo to work in the Second Chance warehouse, processing materials obtained from deconstruction sites for resale.

31.     For the period of his claims, Plaintiff Portillo typically worked approximately 7.5 to 11 or more hours each day at his assigned project worksite. He also worked an additional 30 minutes to four hours per day driving the Second Chance van to and from project sites and/or to and from the Second Chance warehouse when assigned to project sites in or near Maryland, and an additional 30 to 45 minutes per week refueling the van.

32.     For the period of his claims, Plaintiff Portillo typically worked five days per week when he was assigned to sites in Maryland, and he typically worked six or seven days per week when assigned to sites outside Maryland.

33.     Plaintiff Portillo's promised pay rate was $15 per hour from approximately January through August 2021 and $16 per hour until his termination on or around August 28, 2023.

34.     Defendants Second Chance or Foster hired Plaintiff Betancourth in 2017 to work on a deconstruction crew. At that time, Plaintiff Betancourth was jointly employed by Second Chance, Foster, and a Second Chance subcontractor called New World. In approximately 2019, Plaintiff Betancourth submitted a request to Gene Metzger, Second Chance project manager, to be reassigned to one of the Rivas LLCs. Mr. Metzger granted this permission, and Plaintiff Betancourth was reassigned.

35.     Plaintiff Betancourth's responsibilities as a deconstruction crew member included removing furniture, cabinets, fixtures, roofing, and flooring from assigned homes. Second Chance also occasionally assigned Plaintiff Betancourth to drive deconstruction crews to and from worksites.  On other occasions, Defendants assigned Plaintiff Betancourth to work in the Second Chance warehouse, processing materials obtained from deconstruction sites for resale.

36.     Defendants assigned Plaintiff Betancourth to work at sites in Maryland and in other states including New York, New Jersey, Virginia, and Florida.

37.     For the period of her claims, Plaintiff Betancourth typically worked approximately 7.5 to 11 hours each day at her assigned project worksite. She also spent an additional 30 minutes to four hours per day riding in the Second Chance van to and from project sites and/or to and from the Second Chance warehouse when assigned to project sites in or near Maryland.

38.     For the period of her claims, Plaintiff Betancourth typically worked five days per week when she was assigned to sites in Maryland, and six or seven days per week when assigned to sites outside Maryland.

39.     During the period of time relevant to this action, on approximately six occasions, Plaintiff Betancourth worked Saturday shifts of approximately eight hours at Defendant Foster's personal home, 600 East Seminary Avenue, Towson, MD 21286. During those Saturday workdays, Ms. Betancourth and several of her deconstruction coworkers provided gardening, landscaping, and other services for Mr. Foster, who personally supervised the work. For those hours, as for hours spent performing deconstruction work, Second Chance paid Ms. Betancourth and her coworkers by funneling the pay through Defendants 300 LLC and Rivas Mendez.

40.     Plaintiff Betancourth's promised pay rate was $16 per hour and in 2023 was incrementally raised to $16.75 per hour.

41.     Defendants were not completely dissociated from each other with respect to Plaintiffs' work. To the contrary, they shared, allocated responsibility for, and/or codetermined the essential terms and conditions of Plaintiffs' employment.

42.     Defendant Foster and project managers employed by Second Chance directed and supervised Plaintiffs' work, whether they were working on deconstruction sites or at the Second Chance warehouse.

43.     Beginning in 2021, when Plaintiffs were riding or driving in Second Chance vans to Second Chance worksites, Second Chance monitored them via cameras installed in the vans.

44.     Defendants Foster and Second Chance determined Plaintiffs' project assignments.

45.     Defendants Foster and Second Chance determined Plaintiffs' work schedules.

46.     Second Chance project managers—including Gene Metzger, Woody Testerman, John Zungailia, and others—managed all projects to which Plaintiffs were assigned. For projects in Maryland and nearby, the responsible Second Chance project manager often supervised the work on-site. For out-of-state projects, the responsible Second Chance project manager had near-daily communications with the team lead to supervise the work.

47.     Defendant Second Chance supplied the tools and materials for Plaintiffs' work. For example, Second Chance project managers, such as Mr. Metzer and Mr. Testerman, supplied workers with work gear such as helmets, glasses, jackets, and gloves, directly from the Second Chance warehouse.  If one of Plaintiffs or a similarly situated worker needed a replacement work gear item, they were instructed to ask Mr. Testerman for a replacement.

48.     Defendant Second Chance supplied the vehicles that Plaintiffs drove to deconstruction worksites. These vehicles were branded with Second Chance's name and logo on the exterior.

49.     Defendant Second Chance owned or controlled the warehouse(s) that stored the tools, materials, and vehicles Plaintiffs used for deconstruction work.

50.    Plaintiffs were required to wear vests branded with Second Chance's name and logo when performing deconstruction work.

51.    Defendant Second Chance approved the hiring of Plaintiffs and all other individuals jointly employed by Defendants.

52.    Defendants jointly maintained Plaintiffs' time records. Second Chance provided deconstruction team leads with timesheets for tracking daily hours worked by each member of each deconstruction crew. The timesheets listed the name of the assigned project, the name of the responsible Second Chance project manager, and the name of the applicable subcontractor entity (such as 300 LLC). Team leads or drivers returned the completed timesheets directly to Second Chance.

53.    Defendants were jointly involved in paying Plaintiffs and similarly situated employees for their work. Defendant Foster determined the rate that Second Chance paid the Rivas LLCs for each hour of each Plaintiff's work and provided that the Rivas LLCs could retain a few dollars per hour of that amount and pay the rest as wages. The Rivas LLCs then issued payments to Plaintiffs, signed or authorized by Defendant Rivas Mendez. Second Chance paid the Rivas LLCs not by the project, but by the number of hours each Plaintiff worked—essentially funneling Plaintiffs' pay through the Rivas LLCs.

54.    Although Plaintiffs regularly worked more than 40 hours in a week, Defendants maintained a policy and practice of denying Plaintiffs the required overtime rate of 1.5 times their regular rates. Defendant Rivas Mendez informed Plaintiff Betancourth that 300 LLC does not pay its workers an overtime premium because it does not receive compensation for overtime wages from Second Chance. Defendant Rivas Mendez further stated that Second Chance's

"company policy" is that workers hired under or assigned to a contractor only get paid at their regular rate and do not receive an overtime rate for hours over 40 in a workweek.

55.    Defendants also failed to pay Plaintiffs for compensable time spent on preliminary and postliminary tasks. For example, non-driver workers often spent significant uncompensated time unloading tools and materials from one van and loading them into another van in the Second Chance parking lot.

56.    Defendants also failed to pay Plaintiffs for all compensable time spent traveling between worksites in a single day. For example, non-driver workers were not paid for any time spent traveling between the Second Chance warehouse and project worksites if the distance was less than 29 miles, notwithstanding that many projects requiring such travel fell outside the 29-mile radius. Further, non-driver workers were not paid for any travel time between the warehouse and project sites beyond one hour per day for projects in Maryland and beyond 1.5 hours per day for projects in Virginia, notwithstanding that many projects requiring such travel involved longer travel times.

57.    Defendants also failed to pay Plaintiff Portillo for approximately 17 days of work in August 2023 on a project in Virginia.

58.    Defendants unlawfully failed and/or refused to pay Plaintiffs and similarly situated individuals all overtime wages due under the FLSA, 29 U.S.C. § 207, and the MWHL, Md. Code Ann., Lab. & Empl. § 3-415(a).

59.    Defendants unlawfully failed and/or refused to pay Plaintiffs and similarly situated individuals all wages due for work performed prior to the termination of Plaintiffs' employment, as required by the MWPCL, Md. Code Ann., Lab. & Empl. § 3-505(a).

60.     Defendants' unlawful failure and/or refusal to pay all wages due and owing to Plaintiffs and similarly situated individuals was not the result of a legitimate dispute over the amount owing and was not otherwise the result of a bona fide dispute.

61.     Plaintiffs and similarly situated individuals worked on a series of construction services projects for which Second Chance was the general contractor and the Rivas LLCs were the subcontractors. Second Chance is therefore jointly and severally liable for Plaintiffs' unpaid wages for work on those projects under the MWPCL, Md. Code Ann., Lab. & Empl. § 3-507.2.

62.     Defendants unlawfully failed or refused to post the necessary information in the workplace about the MWHL, Md. Code Ann., Lab. & Empl. § 3-423 and the FLSA, 29 C.F.R. § 516.4.

63.     Pursuant to the FLSA, 29 C.F.R. 516, and Md. Code Ann., Lab. & Empl. § 3-424, Defendants were required to maintain a record of each hour, day, and week worked by any employee. The number of hours worked by Plaintiffs for their joint employers will be determined through discovery.

64.     Plaintiffs' work for Defendants was performed in the usual course of Defendants' business of property deconstruction and was an integral part of Defendants' business.

65.     No Plaintiff was engaged in an independent business or occupation to perform work of the same nature as the work they performed for Defendants during their work for Defendants.

66.     No Plaintiff ever signed an affidavit indicating that they were an independent contractor.

67.     Defendants never entered into a written contract with any Plaintiff related to the work described herein.

68.    Defendants never provided any Plaintiff with written notice of independent contractor status in accordance with Md. Code Ann., Lab. & Empl. § 3-914.

69.    Although Plaintiffs were Defendants' employees, Defendants did not apply employment tax withholdings to the payments they issued to Plaintiffs.

70.    Plaintiffs suffered consequential damages as a result of not receiving their payments in full or on time.

71.    Because he did not receive all his wages for his work for Defendants, Plaintiff Portillo fell behind on rent and had to borrow money from family members to cover his daily expenses.

72.   Because she did not receive all her wages for her work for Defendants, Plaintiff Betancourth had to borrow money from family members to cover essential expenses for her family, such as food and childcare. She also had to live in homes and neighborhoods that felt unsafe. If she had been receiving all of her wages, she could have afforded rent in a better neighborhood, giving her children access to better schools.

**Collective Action Allegations Under the FLSA**

73.    Plaintiffs repeat and incorporate by reference all the allegations set forth above.

74.    This action is maintainable as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) as to claims for unpaid wages, damages, interest, and attorneys' fees and costs under the FLSA.

75.    Plaintiffs are victims of Defendants' common scheme to violate the FLSA.

76.    Defendants' scheme involved violating the overtime requirements of the FLSA by misclassifying employees as independent contractors and failing to pay employees 1.5 times their regular hourly rate when they worked more than 40 hours per week.

77.     Plaintiffs Portillo and Betancourth seek collective action status on behalf of all individuals employed by Defendants who did not receive the full amount of overtime compensation due for hours worked in excess of 40 per week for the period of claims covered by this action ("the Collective").

78.     Members of the Collective were all similarly subject to Defendants' common practices, policies, or plans requiring or permitting them to perform work for Defendants' benefit in excess of 40 hours per week without compensation at time-and-a-half their regular rate for those excess hours.

79.     Plaintiffs Portillo and Betancourth are representative of the Collective, have similarly suffered because of Defendants' scheme to violate the FLSA, and are acting in the interests of similarly situated Collective members as well as Plaintiffs' own interests in bringing this action.

80.     These similarly situated employees are known to Defendants, are readily identifiable, and may be located through Defendants' records. They may readily be notified of this action and allowed to opt into it pursuant to 29 U.S.C. § 216(b) for the purpose of collectively adjudicating their claims for unpaid overtime compensation, damages, interest, and attorneys' fees and costs under the FLSA.

**Class Action Allegations Under the MWHL, MWPCL, and MWFA**

81.     Plaintiffs repeat and incorporate by reference all the allegations set forth above.

82.     Pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3), Plaintiffs bring Counts II through IV of this action individually and on behalf of all individuals employed by Defendants to perform deconstruction work at any time starting three years prior to the filing of this Complaint,

who were misclassified as independent contractors and thereby denied the legally required overtime rate for hours worked beyond 40 in a given week ("the Rule 23 Class").

83.    The individuals in the Rule 23 Class are so numerous that joinder of all members of this proposed class is impracticable. While the precise number of class members has not been determined at this time, Defendants, on information and belief, have jointly employed more than 100 individuals during the applicable statute of limitations period. Plaintiffs and the proposed Rule 23 Class have been equally affected by Defendants' violations of law.

84.    There are questions of law and fact common to the proposed Rule 23 Class that predominate over questions solely affecting individual members of this proposed class, including but not limited to the following:

  a.  Whether Defendants maintained policies or practices of misclassifying their employees as independent contractors;

  b.  Whether Defendants maintained policies or practices of denying their employees overtime wages;

  c.  Whether Defendants violated Maryland law for failure to pay all overtime wages due and owing;

  d.  The proper measure and calculation of damages;

  e.  Whether Defendants acted in good faith and with a reasonable belief that the wages paid were not less than those required; and

  f.  Whether Defendants' failure to pay their employees all wages due was the result of a bona fide dispute;

85.    The claims of Plaintiffs Portillo and Betancourth are typical of those of the members of the Rule 23 Class. Plaintiffs, like members of the Rule 23 Class, worked for

Defendants and were subject to Defendants' policies and practices with respect to overtime. More specifically, Plaintiffs were all misclassified as independent contractors, frequently worked more than 40 hours per week, and were denied their earned overtime wages.

86.     Plaintiffs will fairly and adequately protect the interest of the proposed Rule 23 Class and have retained counsel experienced in complex wage and hour class and collective action litigation.

87.     This action is properly maintainable as a class action under Fed. R. Civ. P. 23(b)(3) because questions of law or fact predominate over any questions affecting individual class members. A class action is superior to other methods to ensure a fair and efficient adjudication of this controversy because, in the context of wage and hour litigation, individual plaintiffs lack the financial resources to vigorously prosecute separate lawsuits in federal court against large corporate defendants. Further, Plaintiffs believe that some individual claim amounts may be relatively low such that individuals are unlikely to prosecute meritorious claims. Class litigation is also superior because it will preclude the need for unduly duplicative litigation resulting in inconsistent judgments pertaining to Defendants' policies and practices. There do not appear to be any difficulties in managing this class action.

88.     Plaintiffs intend to send notice to all members of the proposed Rule 23 Class to the extent required by Fed. R. Civ. P. 23.

**COUNT I**
**FAIR LABOR STANDARDS ACT**
**(Individual and Collective Actions)**

89.     Plaintiffs repeat and incorporate by reference all the allegations set forth above.

90.     Defendants failed to pay Plaintiffs and members of the Collective overtime wages in violation of 29 U.S.C. § 207.

91.     Defendants' violations of the FLSA were willful, as that term is used in 29 U.S.C. § 255(a). Defendants knew their violations were unlawful or showed reckless disregard for whether their conduct was prohibited.

92.     Defendants' violations were not the result of a good-faith, reasonable error.

93.     Defendants are liable to Plaintiffs and members of the Collective under 29 U.S.C. § 216(b) for their unpaid overtime wages, an additional equal amount as liquidated damages, interest, reasonable attorneys' fees and costs, and any other relief deemed appropriate by the Court.

**COUNT II**
**MARYLAND WAGE AND HOUR LAW**
**(Individual and Class Actions)**

94.     Plaintiffs repeat and incorporate by reference all the allegations set forth above.

95.     Defendants unlawfully failed or refused to pay overtime wages to Plaintiffs and the Rule 23 Class in violation of Md. Code Ann., Lab. & Empl. §§ 3-415(a), and 3-420.

96.     Defendants did not act in good faith and with a reasonable belief that the wages paid to Plaintiffs and the Rule 23 Class were no less than the wages required under the MWHL.

97.     Defendants are liable to Plaintiffs and the Rule 23 Class pursuant to §§ 3-427(a) and (d) of the MWHL for their unpaid overtime wages, an additional equal amount as liquidated damages, interest, reasonable attorneys' fees and costs, and any other relief deemed appropriate by the Court.

**COUNT III**
**MARYLAND WAGE PAYMENT AND COLLECTION LAW**
**(Individual and Class Actions)**

98.     Plaintiffs repeat and incorporate by reference all the allegations set forth above.

99.     Defendants failed and/or refused to timely pay Plaintiffs and the Rule 23 Class all wages due, including overtime, on their regular paydays in violation of Md. Code Ann., Lab. & Empl. §§ 3-502 and 3-505(a).

100.     Defendants' unlawful failure or refusal to timely pay Plaintiffs and the Rule 23 Class all their earned wages was not in good faith, was not reasonable, did not result from a legitimate dispute over the validity of their claims or the amounts they were owed, and was not otherwise the result of a bona fide dispute.

101.     Plaintiffs and similarly situated individuals suffered consequential damages as a result of Defendants' failure to pay them fully and on time in accordance with the MWPCL, including difficulty paying bills, rent, and/or other basic expenses for themselves and their families.

102.     Pursuant to Md. Code Ann., Lab. & Empl. § 3-507.2, Plaintiffs and the Rule 23 Class seek their unpaid wages, an additional award of double damages, interest, reasonable attorneys' fees and costs, and any other relief deemed appropriate by the Court.

### COUNT IV
### MARYLAND WORKPLACE FRAUD ACT
**(Individual and Class Actions)**

103.     Plaintiffs repeat and incorporate by reference all the allegations set forth above.

104.     Defendants directed and controlled Plaintiffs' and similarly situated individuals' performance of their work for Defendants.

105.     The work Plaintiffs and similarly situated individuals performed for Defendants constituted "construction services" as that term is defined in the MWFA, Md. Code Ann., Lab. & Empl. §§ 3-901 and 3-902, including because it involved the "altering" of real property.

106.     Defendants misclassified Plaintiffs and similarly situated individuals as independent contractors in violation of the MWFA. *Id.* § 3-903.

107.     Defendants did not provide Plaintiffs and similarly situated individuals with notice of independent contractor status in accordance with the MWFA, Md. Code Ann., Lab. & Empl. § 3-914 or Md. Code Regs. 09.12.40.02.

108.     Defendants did not keep records in accordance with Md. Code Regs. 09.12.40.03.

109.     Defendants had actual knowledge, deliberate ignorance, and/or reckless disregard for the truth, and therefore acted knowingly in their misclassification of Plaintiffs and similarly situated individuals as independent contractors or exempt persons. Md. Code Ann. Lab. & Empl. § 3-904(b).

110.     As the direct and proximate result of Defendants' knowing violation of the MWFA, Plaintiffs suffered economic damages including unpaid overtime wages.

111.     Pursuant to the MWFA, Md. Code Ann., Lab. & Empl. § 3-911(c), Defendants are liable to Plaintiffs for their economic damages, including but not limited to unpaid overtime wages; an additional amount equal to three times the amount of such economic damages; interest; and reasonable attorneys' fees and costs.

## COUNT V
## FAIR LABOR STANDARDS ACT
### (Individual Action by Plaintiff Portillo)

112.     Plaintiffs repeat and incorporate by reference all the allegations set forth above.

113.     Defendants failed to pay Plaintiff Portillo minimum wages for his work in August 2023 in violation of 29 U.S.C. § 206.

114.     Defendants' violations of the FLSA were willful, as that term is used in 29 U.S.C. § 255(a). Defendants knew their violations were unlawful or showed reckless disregard for whether their conduct was prohibited.

115.     Defendants' violations were not the result of a good-faith, reasonable error. Defendants are liable to Plaintiff Portillo under 29 U.S.C. § 216(b) for his unpaid minimum wages, an additional equal amount as liquidated damages, interest, reasonable attorneys' fees and costs, and any other relief deemed appropriate by the Court.

## COUNT VI
## MARYLAND WAGE AND HOUR LAW
### (Individual Action by Plaintiff Portillo)

116.     Plaintiffs repeat and incorporate by reference all the allegations set forth above.

117.     Defendants unlawfully failed or refused to pay minimum wages to Plaintiff Portillo for his work in August 2023 in violation of Md. Code Ann., Lab. & Empl. §§ 3-413(b) and 3-420.

118.     Defendants did not act in good faith and with a reasonable belief that the wages paid to Plaintiff Portillo for his work in August 2023 were no less than the wages required under the MWHL.

119.     Defendants are liable to Plaintiff Portillo pursuant to §§ 3-427(a) and (d) of the MWHL for his unpaid minimum wages, an additional equal amount as liquidated damages, interest, reasonable attorneys' fees and costs, and any other relief deemed appropriate by the Court.

## COUNT VII
## MARYLAND WAGE PAYMENT AND COLLECTION LAW
### (Individual Action by Plaintiff Portillo)

120.     Plaintiffs repeat and incorporate by reference all the allegations set forth above.

121.    Defendants failed and/or refused to pay Plaintiff Portillo all wages due for work performed prior to the termination of his employment, on or before the day he would have been paid had his employment not terminated, as required by Md. Code Ann., Lab. & Empl. § 3-505(a).

122.    Defendants' unlawful failure or refusal to timely pay Plaintiff Portillo all his earned wages was not in good faith, was not reasonable, did not result from a legitimate dispute over the validity of his claims or the amounts he was owed, and was not otherwise the result of a bona fide dispute.

123.    Plaintiff Portillo suffered consequential damages as a result of Defendants' failure to pay him fully and on time in accordance with the MWPCL, including difficulty paying bills, rent, and other basic expenses.

124.    Pursuant to Md. Code Ann., Lab. & Empl. § 3-507.2, Plaintiff Portillo seeks his unpaid wages, an additional award of double damages, interest, reasonable attorneys' fees and costs, and any other relief deemed appropriate by the Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that this Court grant them the following relief:

a)    Certify this action as a collective action under the FLSA pursuant to 29 U.S.C. § 216(b);

b)    Certify this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the proposed Rule 23 Class, and appoint Plaintiffs Portillo and Betancourth as class representatives and their counsel as class counsel;

c)    Find that Defendants' actions were willful, not in good faith, not reasonable, and not the result of a bona fide dispute;

d)    Grant judgment against Defendants, jointly and severally, and in favor of each Plaintiff and each member of the Collective in the amount of each individual's respective unpaid wages, plus an equal amount in liquidated damages pursuant to the FLSA, 29 U.S.C. § 216(b);

e)    Grant judgment against Defendants, jointly and severally, and in favor of each Plaintiff and each member of the Rule 23 Class in the amount of each individual's respective unpaid wages, plus liquidated damages, pursuant to the MWHL, Md. Code Ann., Lab. & Empl. § 3-427(a) and (d);

f)    Grant judgment against Defendants, jointly and severally, and in favor of each Plaintiff and member of the Rule 23 Class in the amount of their unpaid wages, including overtime and promised wages, plus double damages pursuant to the MWPCL, Md. Code Ann., Lab. & Empl. § 3-507.2;

g)    Grant judgment against Defendants, jointly and severally, and in favor of Plaintiffs and member of the Rule 23 class in the amount of their economic damages plus treble damages pursuant to the MWFA, Md. Code Ann., Lab. & Empl. § 3-911;

h)    Grant appropriate equitable and injunctive relief to remedy violations, including but not limited to an order enjoining Defendants from continuing or resuming their unlawful practices and/or a declaration that Defendants' acts violate the law;

i)      Grant reasonable incentive awards to the Plaintiffs to compensate them for the time and effort they have spent and will spend protecting the interests of the Collective and Rule 23 Class, and for the risks they took in doing so;

j)      Award Plaintiffs, the Collective, and the Rule 23 Class pre- and post-judgment interest on all amounts owed as allowed by law;

k)      Award Plaintiffs, the Collective, and the Rule 23 Class their costs and reasonable attorneys' fees incurred in this action, as provided in 29 U.S.C. § 216(b), Md. Code. Ann., Lab. & Empl. § 3-427(d), and Md. Code Ann., Lab. & Empl. § 3-507.2; and

l)      Grant such other and further relief as the Court may deem just and proper.

_____/s/_____

Amy Gellatly (Fed Bar No. 31177)

Sam Williamson (Fed Bar No. 20990)
The Public Justice Center
201 North Charles Street, Suite 1200
Baltimore, MD 21201
Tel: (410) 625-9409
Fax: (410) 625-9423
gellatlya@publicjustice.org
williamsons@publicjustice.org

_____/s/_____

Sally Abrahamson (Fed Bar No. 20425)
Anne Kramer (pro hac vice)
Werman Salas P.C.
705 8th Street SE, #100
Washington DC 20003
Tel: (312) 419-1008
Fax: (312) 419-1025
sabrahamson@flsalaw.com
akramer@flsalaw.com

*Attorneys for Plaintiffs*
